**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

**KEVIN RODGERS,**

      **Plaintiff,**

  v.                                    **Civil Action 2:20-cv-2848**
                                              **Judge Sarah D. Morrison**
                                              **Magistrate Judge Chelsey M. Vascura**

**DONNIE MORGAN, Warden,** *et al.***,**

      **Defendants.**

**ORDER and REPORT AND RECOMMENDATION**

      Plaintiff, Kevin Rodgers, an Ohio inmate who is proceeding without the assistance of counsel, brings this action under 42 U.S.C. § 1983 against the following prison officials: Donnie Morgan, Jennie Haywood, J. Driesbach, Eric Groves, and Ms. Kinker (collectively "Defendants"), in which he alleges that Defendants violated his constitutional rights under the First, Eighth, and Fourteenth Amendments. (*See* Pl.'s Compl., ECF No. 1 at PAGEID #1–20.) This matter is before the Court for the initial screen of Plaintiff's Complaint under 28 U.S.C. §§ 1915(e)(2) and 1915A to identify cognizable claims and to recommend dismissal of Plaintiff's Complaint, or any portion of it, which is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A(b)(1)–(2); *see also McGore v. Wrigglesworth*, 114 F.3d 601, 608 (6th Cir. 1997). Having performed the initial screen, for the reasons that follow, the undersigned **RECOMMENDS** that the Court **DISMISS** this action pursuant to §§ 1915(e)(2) and 1915A(b)(1) for failure to state a claim on which relief may be granted.

This matter is also before the Court for consideration of Plaintiff's motion for leave to proceed *in forma pauperis* under 28 U.S.C. § 1915(a)(1) and (2), which is **GRANTED**. (ECF No. 3.) Plaintiff is required to pay the full amount of the Court's $350 filing fee. 28 U.S.C. § 1915(b)(1). Plaintiff's certified trust fund statement reveals that has only $0.59 in his prison account, which is insufficient to pay the filing fee.

Pursuant to 28 U.S.C. § 1915(b)(1), the custodian of Plaintiff's inmate trust accounts (Inmate ID Number A392511) at Ross Correctional Institution is **DIRECTED** to submit to the Clerk of the United States District Court for the Southern District of Ohio as an initial partial payment, 20% of the greater of either the average monthly deposits to the inmate trust account or the average monthly balance in the inmate trust account, for the six months immediately preceding the filing of the Complaint.

After full payment of the initial, partial filing fee, the custodian shall submit 20% of the inmate's preceding monthly income credited to the account, but only when the amount in the account exceeds $10.00, until the full fee of $350.00 has been paid to the Clerk of this Court. 28 U.S.C. § 1915(b)(2). *See McGore v. Wrigglesworth*, 114 F.3d 601 (6th Cir. 1997).

Checks should be made payable to: Clerk, United States District Court. The checks should be sent to:

> Prisoner Accounts Receivable
> 260 U.S. Courthouse
> 85 Marconi Boulevard
> Columbus, Ohio 43215

The prisoner's name and this case number must be included on each check.

It is **ORDERED** that Plaintiff be allowed to prosecute his action without prepayment of fees or costs and that judicial officers who render services in this action shall do so as if the costs had been prepaid. The Clerk of Court is **DIRECTED** to mail a copy of this Order to Plaintiff

and the prison cashier's office.  The Clerk is further **DIRECTED** to forward a copy of this Order to the Court's financial office in Columbus.

## I.  STANDARD OF REVIEW

Congress enacted 28 U.S.C. § 1915, the federal *in forma pauperis* statute, seeking to "lower judicial access barriers to the indigent."  *Denton v. Hernandez*, 504 U.S. 25, 31 (1992).  In doing so, however, "Congress recognized that 'a litigant whose filing fees and court costs are assumed by the public, unlike a paying litigant, lacks an economic incentive to refrain from filing frivolous, malicious, or repetitive lawsuits.'"  *Id*. at 31 (quoting *Neitzke v. Williams*, 490 U.S. 319, 324 (1989)).  To address this concern, Congress included subsection (e), which provides in pertinent part as follows:

> (2) Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that—
>
> * * *
>
> (B) the action or appeal—
>
> (i) is frivolous or malicious; [or]
>
> (ii) fails to state a claim on which relief may be granted. . . .

28 U.S.C. § 1915(e)(2)(B)(i) & (ii); *Denton*, 504 U.S. at 31.  Thus, § 1915(e) requires *sua sponte* dismissal of an action upon the Court's determination that the action is frivolous or malicious, or upon determination that the action fails to state a claim upon which relief may be granted.  *See also* 28 U.S.C. § 1915A (requiring a court to conduct a screening of "a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity . . . [to] identify cognizable claims or dismiss the complaint, or any portion of the complaint [that is] frivolous, malicious, or fails to state a claim upon which relief may be granted").

Further, to properly state a claim upon which relief may be granted, a plaintiff must satisfy the basic federal pleading requirements set forth in Federal Rule of Civil Procedure 8(a). *See also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (applying Federal Rule of Civil Procedure 12(b)(6) standards to review under 28 U.S.C. §§ 1915A and 1915(e)(2)(B)(ii)). Under Rule 8(a)(2), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Thus, Rule 8(a) "imposes legal *and* factual demands on the authors of complaints." *16630 Southfield Ltd., P'Ship v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 503 (6th Cir. 2013).

Although this pleading standard does not require "'detailed factual allegations,' . . . [a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action,'" is insufficient. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). A complaint will not "suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Twombly*, 550 U.S. at 557). Instead, in order to state a claim upon which relief may be granted, "a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). Facial plausibility is established "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility of an inference depends on a host of considerations, including common sense and the strength of competing explanations for the defendant's conduct." *Flagstar Bank*, 727 F.3d at 504 (citations omitted). Further, the Court holds *pro se* complaints "to less stringent standards than formal pleadings drafted by lawyers." *Garrett v. Belmont Cty. Sheriff's Dep't*, 374 F. App'x 612, 614 (6th Cir. 2010) (quoting *Haines v. Kerner*, 404 U.S. 519, 520 (1972)). This lenient treatment, however, has limits; "courts should not have

4

to guess at the nature of the claim asserted." *Frengler v. Gen. Motors*, 482 F. App'x 975, 976–77 (6th Cir. 2012) (quoting *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989)).

## II. BACKGROUND

Plaintiff has been incarcerated since his criminal conviction in 2000. At all times relevant to the Complaint, he was incarcerated at Ross Correctional Institution ("RCI"). He unsuccessfully challenged his conviction on direct appeal and in postconviction motions filed in 2017 and 2018. *State v. Rogers*, 1st Dist. Hamilton No.C-000299, 2000 WL 1886627 (Dec. 29, 2000); *State v. Rogers*, 1st Dist. Hamilton No. C-170599 (Dec. 19, 2018). In January or February 2020, Plaintiff alleges he received "appellate review confirmation of [Plaintiff's] case being accepted back at the appellate court stage." (Compl., ECF No. 1, PAGEID #8–9.) To prepare for his criminal appellate proceedings, Plaintiff requested a "GTL" tablet to perform legal research via the electronic LexisNexis legal database. Defendant Donnie Morgan, Warden of the Ross Correctional Institution where Plaintiff was incarcerated at all relevant times, denied Plaintiff's request, allegedly leaving Plaintiff "to manually research with limited material, out of date books, with no way to 'shepardize' cases for meaningful research to properly litigate and prepare court documents" for his "active litigation in court." (*Id.* at PAGEID #5, 12.) Plaintiff also alleges that Defendant Ms. Kinker, Deputy Warden Special Services, failed to ensure that inmates in segregated housing had adequate access to legal materials or library staff. (*Id.* at PAGEID #5, 10.) Further, Plaintiff alleges that the prison failed to mail out documents related to his criminal appeal to the Hamilton County Clerk of Courts, and that he twice received legal mail that was opened outside his presence in violation of prison policies. (*Id.* at PAGEID #7–8.) Plaintiff identifies Defendant J. Driesbach as "Legal Mail Officer," but does not allege any individual involvement by Driesbach or any of the other named defendants in the mail incidents.

Plaintiff separately alleges that he was wrongfully found responsible for assaulting a fellow inmate.  On January 7, 2020, Defendant Sergeant Eric Graves, Institutional Inspector, issued a conduct report finding that Plaintiff assaulted another inmate on December 27, 2019, resulting lacerations to that inmate's head and back, in violation of Inmate Rules of Conduct 5 ("causing, or attempting to cause, physical harm to another with a weapon") and 36 ("possession or manufacture of a weapon, ammunition, explosive or incendiary device").  (Conduct Report, ECF No. 1, PAGEID #34.)  Plaintiff contends that Defendant Graves's investigation was "faulty" and that Plaintiff was denied access to the witness statements, photos, and video evidence on which Graves relied.  (Compl., ECF No. 1, PAGEID #7, 10; Pl.'s Mot. to Amend Compl., ECF No. 7.)[1]  Plaintiff also submits the incident report from December 27, 2019, in which Corrections Officer Jerry Price states that the injured inmate reported his injuries were caused by a fall from the top bunk in his cell.  (Incident Report, ECF No. 7, PAGEID #97.)  On January 7, 2020, a Rules Infraction Board ("RIB") hearing was held, after which the RIB sustained the Rule 5 violation, but dropped the Rule 36 violation "due to no weapon was found and not enough evidence in the body of the conduct report."  (RIB Disposition, ECF No. 1, PAGEID #36.)  The RIB further imposed a disposition of 90 days in Limited Privilege Housing ("LPH") and 29 days in Restrictive Housing ("RH").  *Id.*  Defendant Morgan administratively reviewed the RIB's decision and affirmed it.  (*Id.* at PAGEID #36–37.)

Plaintiff alleges that he properly and timely submitted an appeal of the RIB's decision to Defendant Jennie Haywood, Warden Morgan's administrative assistant, but that Defendant Haywood "purposely denied/forfeited [Plaintiff's] [RIB] appeal process."  (Compl., ECF No. 1,

---

[1] On June 10, 2020, Plaintiff filed a Motion to Amend his Complaint to attach additional exhibits.  (ECF No. 7.)  For good cause shown, that Motion is **GRANTED**.

6

PAGEID #5.)  Elsewhere in the Complaint, Plaintiff characterizes Defendant Haywood as having "ignored" or "inadequately dismissed" Plaintiff's RIB appeal.  (*Id.* at PAGEID #5, 9, 16.)  However, Plaintiff also submits an exhibit titled "Legal Services Decision on Appeal," which reflects that the RCI's Chief Legal Counsel considered Plaintiff's RIB appeal and affirmed the RIB's decision on May 11, 2020.  (ECF No. 7, PAGEID #98.)

As a result of the charges and RIB decision, Plaintiff alleges he was placed in RH on December 27, 2019, then sent to LPH on January 22, 2020, then sent back to RH on January 28, 2020.  (Compl., ECF No. 1, PAGEID #7, 11.)  Plaintiff was also subject, apparently as a result of Plaintiff's Rule 5 infraction, to a Serious Misconduct Panel ("SMP") review.  The SMP recommended that Plaintiff's security level be changed to Extended Restrictive Housing ("ERH"). (Letter from Ed Banks, ODRC Regional Director, ECF No. 1, PAGEID #23.)  "ERH is the most restrictive security level in the ODRC reserved for inmates who constitute the greatest threat to the safety and security of the community, staff, others, and/or the secure operations of a correctional facility."  (ODRC Policy No. 55-SPC-02, Restrictive Housing Procedures.)  Plaintiff alleges his ERH placement was for a term of 24 months, "pending transfer to maximum (4B) facility."  (Compl., ECF No. 1, PAGEID #11.)  It appears that Plaintiff also appealed his ERH placement, but that appeal was denied on March 30, 2020.  (Letter from Ed Banks, ECF No. 1, PAGEID #23.)

Plaintiff sues all five Defendants in both their official and individual capacities.  He seeks only money damages as follows: $3,500 against Donnie Morgan, $5,000 against Jennie Haywood, $5,000 against Eric Graves, and $2,500 against J. Driesbach.  No relief is sought specifically against Ms. Kinker.

7

### III.  ANALYSIS

The undersigned construes Plaintiff's allegations that Defendants Morgan and Kinker failed to ensure adequate access to legal materials or library staff, as well as the allegations that the prison failed to mail out legal documents and opened his legal mail outside his presence, as seeking to advance First Amendment access-to-courts claims.  The undersigned further construes Plaintiff's allegations that Defendant Graves improperly investigated the inmate assault, and that Defendant Haywood improperly handled his RIB appeal, resulting in his placement in LPH, RH, and ERH, as seeking to advance claims for violation his Fourteenth Amendment procedural due process right and Eighth Amendment right to be free from cruel and unusual punishment.  The undersigned will consider these claims in turn.

**A.  Official Capacity Claims**

The undersigned concludes that, to the extent Plaintiff seeks monetary damages against Defendants in their official capacities, his claims are barred by the Eleventh Amendment.  The Eleventh Amendment of the United States Constitution operates as a bar to federal-court jurisdiction when a private citizen sues a state or its instrumentalities unless the state has given express consent.  *Pennhurst St. Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1983); *Lawson v. Shelby Cnty.*, 211 F.3d 331, 334 (6th Cir. 2000).  "It is well established that § 1983 does not abrogate the Eleventh Amendment."  *Harrison v. Michigan*, No. 10-2185, 2013 WL 3455488, at *3 (6th Cir. July 10, 2013) (citing *Quern v. Jordan*, 440 U.S. 332, 341 (1979)).  Moreover, "an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity. It is not a suit against the official personally, for the real party in interest is the entity."  *Kentucky v. Graham*, 473 U.S. 159, 166 (1985) (citing *Brandon v. Holt*, 469 U.S. 464, 471–72 (1985)). Thus, it is immaterial that Plaintiff named individual employees of RCI rather than the state of Ohio; Ohio is the real party in interest in the official capacity claims.  Because Ohio has not

waived its sovereign immunity in federal court, it is entitled to Eleventh Amendment immunity from suit for monetary damages. *Mixon v. State of Ohio*, 193 F.3d 389, 397 (6th Cir. 1999).

Accordingly, it is **RECOMMENDED** that Plaintiff's claims for monetary damages against Defendants in their official capacities be **DISMISSED.**

**B.     First Amendment Access to Courts**

        **a.     Plaintiff's claims related to inadequate legal research materials and failure to mail legal documents are barred by *Heck v. Humphrey*.**

Plaintiff generally alleges that he was denied adequate access to legal research materials, and that the prison failed to mail out materials necessary for his criminal appeal. Prisoners have a First and Fourteenth Amendment right of access to the courts. *See Lewis v. Casey*, 518 U.S. 343, 351–54 (1996). To state a claim that a state actor has violated that right, a plaintiff must allege an "actual injury" and official conduct that is more than mere negligence. *See Harbin-Bey v. Rutter*, 420 F.3d 571, 578 (6th Cir. 2005); *Gibbs v. Hopkins*, 10 F.3d 373, 379 (6th Cir. 1993). "Actual injury" can be demonstrated by "the late filing of a court document or the dismissal of an otherwise meritorious claim." *Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996). In addition, the underlying action cannot be frivolous. *Lewis*, 518 U.S. at 353; *accord Hadix v. Johnson*, 182 F.3d 400, 405–06 (6th Cir. 1999) ("By explicitly requiring that plaintiffs show actual prejudice to non-frivolous claims, *Lewis* did in fact change the 'actual injury' requirement as it had previously been applied in this circuit."). Thus, "the underlying cause of action . . . is an element that must be described in the complaint, just as much as allegations must describe the official acts frustrating the litigation." *Christopher v. Harbury*, 536 U.S. 403, 415 (2002) (citing *Lewis*, 518 U.S. at 353, n.3). "Like any other element of an access claim, the underlying cause of action and its lost remedy must be addressed by allegations in the complaint sufficient to give fair notice to a defendant." *Id.* at 416. Accordingly, in drafting a complaint, a plaintiff must:

9

(1) clearly state the underlying claim; and (2) include supporting facts that describe "official acts frustrating the litigation" to show actual injury.  *Id.* at 415.

Here, Plaintiff does not clearly identify any underlying claim that was frustrated by his inability to access legal research materials, stating only that his limited research access "may and can cause an impediment on petitioners to file claims."  (Compl., ECF No. 1, PAGEID #9.)  Further, to the extent he relies on his criminal appellate proceedings as a non-frivolous underlying claim, any access-to-courts claim founded on a challenge to a criminal conviction is barred by *Heck v. Humphrey*, 512 U.S. 477 (1994).  *See Sampson v. Garrett*, 917 F.3d 880, 881–82 (6th Cir. 2019) (access-to-courts claim that necessarily relies on invalidity of underlying criminal conviction is barred by *Heck*).  If Plaintiff wishes to attack the validity of his criminal conviction, he must do so via proceedings in *habeas corpus*.  *Id.*  Plaintiff has therefore not sufficiently pleaded an access-to-courts claims based on his limited access to legal research materials or failure to mail legal documents.

        **b.**      **Plaintiff's claims related to opening his legal mail do not sufficiently plead the individual involvement of any government official.**

Plaintiff further contends his First Amendment right of access to courts was violated when two pieces of legal mail (from the Ohio Innocence Project and the Ohio Public Defender, respectively) were opened outside his presence.  "A prisoner's right to receive mail is protected by the First Amendment . . . ."  *Sallier v. Brooks*, 343 F.3d 868, 873 (6th Cir. 2003).  The protection is heightened when the incoming mail is legal mail.  *Id.*  at 874.  Prison officials may open and inspect a prisoner's "legal mail" only in the presence of the prisoner "in accordance with appropriately drafted and uniformly applied regulations."  *Kensu v. Haigh*, 87 F.3d 172, 174 (6th Cir. 1996) (citing *Wolff v. McDonald*, 418 U.S. 539 (1974)).  Prison policy or other regulations may, therefore, prohibit the opening of legal mail outside the presence of the

10

prisoner. In the alternative, the United States Court of Appeals for the Sixth Circuit Court has approved an opt-in system in which prison officials may open any mail outside a prisoner's presence unless the prisoner has affirmatively requested that mail sent by a court or counsel be opened only in the prisoner's presence. *See Knop v. Johnson*, 977 F.2d 996, 1012 (6th Cir. 1992), cert. denied, 507 U.S. 973 (1993). The Court approved that system as a way to balance the prison's needs against the prisoner's rights but stressed that an opt-in system would be constitutionally sound only if prisoners received written notice of the policy. *Sallier*, 343 F.3d at 874. Accordingly, when a prison official is on notice, either by virtue of prison policy or regulation or prisoner request, the official may not open legal mail outside the prisoner's presence.

Here, Plaintiff specifically alleges that "[b]y policy (legal mail) is supposed to be opened in my presence." (Compl., ECF No. 1, PAGED #7.) However, he fails to allege that any of the named Defendants (or any particular government official) was personally involved in the opening of his legal mail. The Sixth Circuit "has consistently held that damage claims against government officials arising from alleged violations of constitutional rights must allege, with particularity, facts that demonstrate what *each* defendant did to violate the asserted constitutional right." *Lanman v. Hinson*, 529 F.3d 673, 684 (6th Cir. 2008) (citing *Terrance v. Northville Reg'l Psychiatric Hosp.*, 286 F.3d 834, 842 (6th Cir. 2002)) (emphasis in original). "[C]ategorical references to 'Defendants'" do not meet this standard. *Marcilis v. Twp. of Redford*, 693 F.3d 589, 596–97 (6th Cir. 2012). Although J. Driesbach is named as a Defendant and identified as "legal mail officer," Plaintiff does not allege any personal involvement by Driesbach in the opened mail incidents. Further, although "Officer Smith" is alleged to have delivered one of the pre-opened mail pieces, Smith is not named as a Defendant in this action. Finally, Plaintiff's

11

categorical reference to "[t]he Legal Mail Officials at RCI" refusing to follow the legal mail policy does not satisfy the requirement to plead individual involvement by each Defendant. (Compl., ECF No. 1, PAGEID #8.)

Accordingly, it is **RECOMMENDED** that Plaintiff's First Amendment access-to-courts claim be **DISMISSED.**

C. **Fourteenth Amendment Due Process**

Plaintiff has also failed to plausibly allege a due process claim. More specifically, Plaintiff's allegations are insufficient to implicate federal due process concerns because he has not alleged that the results of the RIB and SMP proceedings—namely, change in his security level and/or assignment to RH, LPH, or ERH—amounted to a deprivation of a constitutionally protected interest.

"[T]he Fourteenth Amendment's Due Process Clause protects persons against deprivations of life, liberty, or property; and those who seek to invoke its procedural protection must establish that one of these interests is at stake." *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). "An inmate establishes a liberty interest when a change in conditions of confinement 'imposes atypical and significant hardship on [him] in relation to the ordinary incidents of prison life.'" *Williams v. Lindamood*, 526 F. App'x 559, 562 (6th Cir. 2013) (quoting *Sandin v. Conner*, 515 U.S. 472, 484 (1995)). "[A]n increase in security classification . . . does not constitute an 'atypical and significant' hardship in relation to the ordinary incidents of prison life because a prisoner has no constitutional right to remain incarcerated in a particular prison or to be held in a specific security classification." *Harbin–Bey*, 420 F.3d at 577 (internal quotation marks and citation omitted); *see also Moody v. Daggett*, 429 U.S. 79, 88 n.9 (1976) (change in "prisoner classification" does not implicate a due process right); *Harris v. Truesdell*, 79 F. App'x 756, 759 (6th Cir. 2003) (holding that neither "punishment of more than 60 days of punitive

segregation" nor a change in security classification "give rise to a protected Fourteenth Amendment Liberty interest"); *Carter v. Tucker*, 69 F. App'x 678, 680 (6th Cir. 2003) (holding that inmate's placement in disciplinary confinement or a change in security classification or housing assignment did not implicate the Due Process Clause). Courts in this District have expressly held that assignment to ERH, ODRC's most restrictive security level, does not implicate a due process liberty interest. *See Cook v. Davis*, No. 1:19-CV-624, 2019 WL 4564741, at *4 (S.D. Ohio Sept. 20, 2019); *Wheeler v. Pickaway Corr. Inst.*, No. 2:19-CV-3512, 2019 WL 4744781, at *4 (S.D. Ohio Sept. 30, 2019); *Hairston v. Smith*, No. 2:18-CV-826, 2018 WL 4599905, at *4 (S.D. Ohio Sept. 25, 2018), *report and recommendation adopted*, 2018 WL 5268747 (S.D. Ohio Oct. 23, 2018).

Here, Plaintiff has not alleged that the challenged RIB and SMP proceedings resulted in the lengthening of his prison sentence, the withdrawal of good-time credits, or any other atypical and significant hardship in relation to the ordinary incidents of prison life. Because Plaintiff does not have a constitutional right to a particular security level or housing assignment, it is **RECOMMENDED** that Plaintiff's Fourteenth Amendment due process claim be **DISMISSED.**

## D. Eighth Amendment Cruel and Unusual Punishment

Similarly, placement in segregated housing is insufficient to constitute an Eighth Amendment violation. "To move beyond the pleading stage in this setting, an inmate must allege that he has been deprived 'of the minimal civilized measure of life's necessities.'" *Harden-Bey v. Rutter*, 524 F.3d 789, 795 (6th Cir. 2008) (quoting *Rhodes v. Chapman,* 452 U.S. 337, 347 (1981)). "Alleging that prison conditions 'are restrictive and even harsh' does not suffice because such conditions 'are part of the penalty that criminal offenders pay for their offenses against society.'" *Id.; see also Hudson v. McMillian,* 503 U.S. 1, 9 (1992) ("[E]xtreme deprivations are required to make out a conditions-of-confinement claim [under the Eighth

13

Amendment]. Because routine discomfort is part of the penalty that criminal offenders pay for their offenses against society, only those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation.") (internal quotation marks and citations omitted). It follows that, "[b]ecause placement in segregation is a routine discomfort that is a part of the penalty that criminal offenders pay for their offenses against society, it is insufficient to support an Eighth Amendment Claim." *Murray v. Unknown Evert,* 84 F. App'x 553, 556 (6th Cir. 2003). Accordingly, "[t]he mere fact that [Plaintiff] was placed in detention, with nothing more, is insufficient to state an Eighth Amendment claim." *Id.* Because Plaintiff has not pleaded any injury beyond placement in restrictive housing, it is **RECOMMENDED** that Plaintiff's Eighth Amendment claim be **DISMISSED.**

## IV. DISPOSITION

For the reasons set forth above, Plaintiff's motion for leave to proceed *in forma pauperis* under 28 U.S.C. § 1915(a)(1) and (2) (ECF No. 3) is **GRANTED**. Further, Plaintiff's Motion to Amend the Complaint (ECF No. 7) is **GRANTED**. In addition, it is **RECOMMENDED** that the Court **DISMISS** this action without prejudice pursuant to §§ 1915(e)(2) and 1915A(b)(1) for failure to state a claim on which relief may be granted.

The Clerk of Court is **DIRECTED** to mail a copy of this Order to Plaintiff and the prison cashier's office. The Clerk is further **DIRECTED** to forward a copy of this Order to the Court's financial office in Columbus.

## PROCEDURE ON OBJECTIONS

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with

supporting authority for the objection(s). A Judge of this Court shall make a *de novo* determination of those portions of the Report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a Judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the Magistrate Judge with instructions. 28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the District Judge review the Report and Recommendation *de novo*, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

/s/ *Chelsey M. Vascura*
CHELSEY M. VASCURA
UNITED STATES MAGISTRATE JUDGE